## Schwalbe's Estate

*Harry J. Alker, Jr.*, and *Murdoch, Paxson, Kalish & Green*, for petitioners.

*Larzelere & Wright*, for respondent.

HOLLAND, P. J., December 20, 1935. — Harry O. Schwalbe died on May 20, 1935, a resident of Lower Merion Township, this county. He left a will under date of July 6, 1932, by the last item of which he appointed Albert W. Sanson and Girard Trust Company executors thereof.

By letter under date of May 27, 1935, addressed to Sanson, Girard Trust Company, by its trust officer, stated that it would not qualify as coexecutor with Sanson, assigning as reasons the requirements imposed upon it by the parts of the will designated therein as "Lastly", "(d)", and "(e)". A copy of this letter is appended to the appeal as part of the proceedings, certified to this court by the register. It was accepted and acted upon by the register as the renunciation of Girard Trust Company.

On June 14, 1935, the will was admitted to probate and letters testamentary granted to Albert W. Sanson, he having qualified. This action was proper on the part of the register. It is not indispensable that letters be granted to two named executors simultaneously. There was no impediment to the probate of the will, nor has any been averred, much less shown, since.

The beneficiaries under the will are testator's wife, Amanda Schwalbe, his brother William Schwalbe, his daughter Marion Schwalbe (now Green), his son William Schwalbe, his daughter Dorothy Schwalbe (now Connell), his grandson Harry Connell, and certain chari-

ties having contingent interests. The wife of testator is deceased. The daughter Marion and the son William are beneficiaries of income from the trust of the residue for life with contingent interests in the principal thereof as and when they respectively reach certain ages, also with a contingent interest in each other's portion, their respective issue having contingent interests in the principal of the trust. The daughter Dorothy is entitled to the use by the trustees of a portion of the income of the trust for her with discretion on their part to use additional income from the whole residue. The grandson Harry Connell is entitled to the use by the trustees in his behalf of part of the income of the residue.

Marion is a minor over 14, having for the guardian of her estate Robert M. Green, by appointment of the Orphans' Court of Philadelphia County. Harry Connell is a minor over 14, having for the guardian of his estate Harry Segal, by appointment of the Orphans' Court of Philadelphia County. Dorothy Schwalbe (now Connell) is a weak-minded person, having for the guardian of her estate Isadore S. Wachs, by appointment of the Court of Common Pleas of Philadelphia County.

On July 31, 1935, Robert M. Green, guardian of Marion Schwalbe Green, Isadore S. Wachs, guardian of Dorothy Schwalbe Connell, and Harry Segal, guardian of Harry John Connell, perfected their appeal from the probate of the will and the granting of letters testamentary thereon.

On August 1, 1935, these fiduciaries filed their petition, joined in by Marion Schwalbe Green and Harry John Connell, to show cause why the appeal should not be sustained and the grant of letters testamentary to Sanson opened and The Real Estate-Land Title & Trust Company permitted to qualify as a coexecutor and cotrustee upon executing an agreement to pay the estate, on all trust funds remaining uninvested for a period of 30 days, the highest rate of interest allowed by law and the rules

of the Federal Reserve Board, the Federal Deposit Insurance Corporation, and the Philadelphia Clearing House Association. The citation was served upon Sanson, the brother William, and certain charities having contingent interests.

An answer to the petition was filed on September 9, 1935, by Sanson, denying that such an agreement would be in compliance with the terms of the will.

Although the appeal is from the probate of the will and the granting of letters to Sanson, the purpose thereof in reality, as indicated by the petition, is to have letters testamentary granted to a trust company, preferably Girard Trust Company, the one named in the will, without the restriction placed upon it by the clauses in the will designated "Lastly", "(d)", and "(e)". They are as follows:

"(d) Generally to make investments and reinvestments only in first mortgages and bonds accompanying the same (except wherein I have directed the purchase of real estate in Paragraph Sixth of this my Will) and to alter, vary and change investments and reinvestments, but only in first mortgages and bonds (except wherein I have directed the purchase of real estate in Paragraph Sixth of this my Will) but in no event shall such mortgages and bonds net to my estate less than Four and one-half per cent. (4½%) per annum.

"(e) I order and direct that the Girard Trust Company, of Philadelphia, before it shall qualify as Co-Executor and Co-Trustee of my estate, shall enter into an agreement with individual Executor and Trustee, to the effect that it shall pay or cause to be paid interest at the rate of Four per cent. (4%) per annum upon all funds of my estate remaining uninvested for a period of more than Thirty (30) days, and that all such uninvested funds shall bear interest to be paid my estate by said Girard Trust Company, of Philadelphia, at the rate of Four per cent. (4%) per annum, and further that said

Girard Trust Company, of Philadelphia, and my Co-Executor and Co-Trustee shall not charge or receive a commission for their joint services as Executors and Trustees in excess of Five per cent. (5%) upon income collected and Three per cent. (3%) upon principal, to be divided equally between them, and said Girard Trust Company, of Philadelphia, so agreeing and qualifying as above set forth, shall then and in no other event, be invested with all the powers herein given to my above named individual Trustee."

Provision "(d)" has to do with the duties of the trustees and need not be considered in this proceeding; "(e)" is the important provision for our consideration at this time.

In our opinion, any agreement by a trust company operating in Pennsylvania as to deposits, as required by "(e)", would be absolutely illegal, unenforceable, and void. As to "(d)", an enforcement of it would be putting the trust company in the position of a guarantor of a bond and mortgage in violation of section 1021 of the Banking Code of May 15, 1933, P. L. 624. Aside from this statute, however, the law has never tolerated the imposition of a guaranty of investments upon a fiduciary.

Reverting again to "(e)", such a proposed agreement as to deposits could violate the rules as to interest rates of the Federal Reserve System authorized to be imposed upon member banks by Federal statute, the rules as to interest rates allowed by banks insured by the Federal Deposit Insurance Corporation, and the statutes of the Commonwealth applying to banks and bank and trust companies.

The Act of Congress of December 23, 1913, 38 Stat. at L. 251, sec. 19, as finally amended by the Act of August 23, 1935, 49 Stat. at L. 684, sec. 324(c), empowers the board of governors of the Federal Reserve System, from time to time, to limit the rate of interest to be paid by member banks.

The final Act of Congress on the subject, that of August 23, 1935, 49 Stat. at L. 684, sec. 101, authorizes the board of directors of the Federal Deposit Insurance Corporation to regulate the interest to be paid upon all deposits of banks not members of the Federal Reserve System, which, we take it, also applies to banks that are members of the Federal Reserve System, insured as to their deposits, but renders its application less important to member banks, as like restrictions are imposed upon them by the Act of August 23, 1935, 49 Stat. at L. 684, sec. 324(c).

The Pennsylvania Act of July 2, 1935, P. L. 542, sec. 1003(a), authorizes the Banking Department to regulate the maximum rate of interest to be paid by a bank or bank and trust company.

It is apparent that any such agreement as to the interest to be paid on a deposit by a trust company, be it State or Federal, is bound to run afoul of one or more of the above three restrictions emanating from the agencies and authorities of the State and Federal Governments. Therefore, even if it were voluntarily entered into in strict compliance with the will, it would be impossible of performance.

We are now introduced to the major question involved in this proceeding, which is as to the intention of the testator generally of having a corporate coexecutor. Is it his intention to have a corporate coexecutor, preferably with the agreement in question but if that is impossible then the corporate coexecutor with the next best arrangement in lieu of the agreement, or does he intend to have the corporate coexecutor with the agreement or not at all?

"Lastly (e)" says that "Girard Trust Company . . . so agreeing . . . shall then and in no other event, be invested with all the powers herein given . . . individual trustee". From a reading of the whole of "(e)" we take it as a condition to its becoming executor also.

It is argued by respondent that this language, and the same language is in "(f)", is conclusive that neither Girard Trust Company nor any other trust company was to become executor except with the agreement. "In no other event" is strong language, he argues, with but a single meaning. We can only agree with this view as to the language, but we must consider the circumstances at the time of the execution of the will. It is a reasonable inference that testator did not know the condition was illegal, void, and unenforceable, which brings us back to the original question of the general intent.

The will taken as a whole shows a general scheme of at all times having a corporate and individual executor and also a corporate and individual trustee. Throughout the entire fifth item of the will he refers to the trustees and "the survivor, successor or successors of them". In the seventh item he refers to "my executors or trustees . . . or the survivor, successor or successors of them". The same language in the eighth item is used applying to his executors only. The word "survivor" clearly is used as applying to the individual fiduciary and the word "successor" or "successors" clearly is used as applying to the corporate fiduciary. From this language and the will as a whole we are of the opinion testator intended to have a corporate and individual executor. The agreements demanded of the corporate fiduciary, therefore, seem to us subsidiary to this marked general intent and we doubt that the testator would want the general intent to fall because of the failure of the subsidiary detail of his general intent. We are therefore of the opinion that testator intended to have the corporate executor, his choice being Girard Trust Company, and, the agreement imposed being impossible, his general intent should prevail: To have Girard Trust Company as coexecutor without the agreement.

It must be remembered that the letter of May 27, 1935, of Girard Trust Company, that it would not qualify as coexecutor, assigned as reasons the threats contained in

"(d)" and "(e)" of the last item of the will. Ordinarily, as pointed out by respondent in his brief, a renunciation once made cannot be recalled, but where the renunciation is because of an illegal burden sought to be thrust upon the prospective fiduciary, but for which it would not have renounced, it should be given the opportunity of reconsidering its renunciation when that impediment is removed. When the foundation of the renunciation falls the renunciation falls with it, unless the named executor chooses to confirm it.

The petition and the citation in pursuance thereof seek to have The Real Estate-Land Title & Trust Company admitted to qualify as coexecutor and cotrustee upon executing an agreement with Sanson to pay interest on deposits at the highest rate allowed by law and by the Philadelphia Clearing House Association. This is in recognition of "Lastly (f)", upon the supposition that Girard Trust Company is persisting in its renunciation. As indicated above, Girard Trust Company should be given the opportunity to reconsider its renunciation, and if it persists therein, then, alternately, The Real Estate-Land Title & Trust Company, which has expressed its willingness to qualify as above prayed for, should be admitted, or some other reputable trust company selected by Sanson. The agreement as proposed by the petitioners approximates, as closely as may be, the intention of testator consistent with that which is legal, but we see no reason for an agreement at all, as such agreement would be only expressing that which the law already permits.

And now, December 20, 1935, it is ordered and decreed that the prayer of the petition be granted, and that the probate of the will be opened and letters testamentary granted to Girard Trust Company, one of the coexecutors named in the will, without the execution or filing by said coexecutor of the agreement as to uninvested funds mentioned in "Lastly (e)" of the will.

From Aaron S. Swartz, Jr., Norristown.